IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO. 4:03-cr-00069-SPM-AK

MARCUS NEAL MANNING,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 156, Motion to Vacate under 28 U.S.C. § 2255, and supporting memorandum, Doc. 157, by Marcus Neal Manning.[1] The Government has filed its response, Doc. 161, and Defendant has filed a reply. Doc. 162. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

On November 4, 2003, Defendant was charged in a three-count Indictment with distributing and possessing with intent to distribute cocaine base and possessing a firearm in connection with a drug offense. Doc. 1. Defendant was later charged by Superseding Indictment with an additional count of possessing a firearm while under a domestic restraining order. Doc. 57.

---

[1]This case was originally assigned improvidently to the undersigned and was later transferred to another magistrate judge. Doc. 163. Afterward, following an administrative redistribution of cases, the case was re-assigned to the undersigned. Doc. 173.

After the Indictment was filed, Defendant moved to suppress the "controlled substances, the drug paraphernalia, and the firearm seized from his residence" on the grounds that the officers acted unreasonably in their execution of the search warrant. Doc. 16. The Court conducted a hearing on the motion and denied the motion, finding that the "execution of the warrant was reasonable and no basis for suppression exists." Doc. 35.

Defendant subsequently filed a second motion to suppress. Doc. 41. On that occasion, citing *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant sought the suppression of all evidence seized from his apartment "[b]ecause the search that led to the seizure...was issued on the basis of an affidavit that contained false information and the inclusion of that information was done under circumstances tantamount to a reckless disregard of the truth...." *Id*. Defendant did not argue that the swearing officer was "actually aware of [the CI's] alleged deceit." Doc. 61. Instead, he argued that the officer "reasonably should have known [the CI] was lying about the controlled buys, and that [the officer's] failure to take additional precautions to ensure that the controlled buys were valid demonstrates more than mere negligence: it demonstrates a reckless disregard for the truth." *Id*.

After a hearing,[2] the Court found that the evidence "refutes Defendant's argument." *Id*. According to the Court, the video evidence "strongly corroborates [the CI's] representations to [the officer] that the cocaine returned was purchased from Defendant during the controlled buys." *Id*. Alternatively, even if the CI "somehow faked the controlled buys and was able to manipulate Defendant's actions...to give the appearance of a crack cocaine sale," the swearing

---

[2]The Superseding Indictment was returned before this hearing.

officer "took reasonable precautions to ensure that legitimate controlled buys were made." *Id*.

Thus, the officer's precautions with the CI and the surveillance recordings supported the

officer's testimony that "he believed [the CI] actually made controlled buys from Defendant, as

stated in his probable cause affidavit." *Id*.

Following the filing of the Superseding Indictment, Defendant moved for a separate trial

or for bifurcation as to Count Four, possession of a firearm while under a domestic violence

injunction.  Doc. 64.  The motion was later denied.  Doc. 94.

Counsel representing Defendant, Randolph Murrell, then filed a motion for appointment

of new counsel because he and Defendant "have had a number of disagreements over

strategy...."  Doc. 67.  Counsel later filed a supplement to the motion which more specifically

identified the areas of disagreement.  Doc. 74.  Shortly thereafter, Defendant submitted his own

recitation of the disagreements between him and Mr. Murrell.  Doc. 79.  The Court granted the

motion, and Gary Printy was appointed to represent Defendant.  Doc. 78.

The Government then filed a motion in limine to exclude evidence "pertaining to

allegations of police corruption or third party culpability in the captioned case."  Doc. 92.

According the Government, Mr. Printy "advised that the defendant believes that the current

prosecution is being pursued by Officer [Jeff] Lockley in retaliation for allegations of a sexual

assault made by a relative of the defendant against the son of Officer Lockley" and "indicated

that the defense will try to show that Officer Lockley had the motive and opportunity to 'plant'

the drugs that were seized from the defendant's apartment...."  *Id*.  The Court denied the motion,

finding:

[T]he evidence sought to be presented by Defendant is probative on the issue of

whether Defendant was set up by Officer Lockley or at the direction of Officer Lockley.  Since Officer Lockley has a significant connection to this case, Defendant should be allowed to inquire as to his bias against Defendant and his connection to the evidence presented in this case.  Admission of the testimony does not result in unfair prejudice to the Government because Defendant has presented a sufficient basis for his claim.

Doc. 109.

The Government also filed a second motion in limine.  Doc. 95.  On that occasion, the Government sought authority to "permit the testimony of Stella Bryant concerning [a] phone call from defendant and his mother," Janice Jones, which was "an attempt to have Ms. Bryant dissuade her brother, the confidential informant in this case, from testifying about the controlled buys...."  *Id*.  According to the Government, the phone call was "relevant to the defendant's consciousness of guilt and should be admitted for that purpose."  *Id*.  The Court denied this motion as well, finding Ms. Bryant's proposed testimony to be problematic:

First, no threats were made toward Ms. Bryant or the confidential informant.  Nor is there a clear indication that Ms. Jones intended to dissuade the confidential informant from testifying truthfully at trial....

Second, the Government has not established a sufficient predicate to show that the male Ms. Bryant heard instructing Ms. Jones in the background was Defendant.  Absent a sufficient predicate linking the voice to Defendant, testimony about the call is not relevant, and any probative value is outweighed by unfair prejudice to Defendant.

Doc. 110.

Defendant filed a third motion to suppress attacking the search of Defendant's apartment and the seizure of evidence "because the search which led to the seizure of these items was issued on the basis of an Affidavit containing false information, the inclusion of which was done under circumstances tantamount to a reckless disregard of the truth...."  Doc. 99.  As the Court

recognized, Defendant had already unsuccessfully raised this identical issue in the second

motion to suppress.  Doc. 111.  This motion, however, rested "on a sworn statement that was

recently obtained from the confidential informant...who contradicts the testimony presented by

[the swearing officer] at the hearing on the second motion to suppress."  *Id*.  The Court found the

CI's statements "lack credibility," as he had "made conflicting statements in the past regarding

these matters," and determined that Defendant had not shown the officer "had a reckless

disregard for the truth."  *Id*.

At trial, the parties stipulated that the drugs seized from Defendant's apartment and

recovered from the CI had been "tested by the Florida Department of Law Enforcement and

confirmed to contain the type and quantity of drugs described."  Doc. 139 at 165.  More

specifically, the stipulation covered exhibits totaling 229.4 grams "of a mixture or substance

containing cocaine base, commonly known as crack cocaine."  *Id*. at 164-65.  The stipulation

was signed by Defendant.[3]  *Id*. at 164.  Further, the confidential informant, Anthony Sanders,

testified, stating that essentially everything he had told the police was a lie and that he never

purchased any drugs from Defendant.  *Id*. at 220-40.

The jury convicted Defendant on Counts One, Two, and Four and found him not guilty

on Count Three.  Doc. 116.  In the Presentence Report (PSR), the probation officer identified

228.7 grams of cocaine base as having been seized during the search of Defendant's apartment.

PSR at ¶ 15.  The .7 grams of cocaine base recovered from the CI had "no impact on the

guideline calculation."  *Id*. at ¶ 16.  Because of the amount of cocaine base involved, the officer

---

[3]There is no indication that the signed stipulation was made a separate part of the record.

calculated the base offense level at 34 and assessed a two-point increase "[d]ue to the fact that

Manning stored a firearm in his residence in close proximity to where he stored his drugs, and

where drug transactions occurred...." *Id*. at ¶ ¶ 21 & 22.  With a total offense level of 36 and a

criminal category I, Defendant's Guidelines range was 188-210 months.  *Id*. at ¶ 58.

Defendant objected to the two-point firearm assessment because he "was found not guilty

of [Count Three]...there was no jury finding regarding this issue, and...the government has not

met the burden of showing a connection between the firearm and the offense of conviction."  *Id*.

at ¶ 73.  While he denied or stated he was without knowledge with regard to the drugs and the

drug quantities, he agreed that the base offense level was 34, which would result in a Guidelines

range of 151-188 months imprisonment.  *Id*. at ¶ ¶ 15, 16, 21, & 58.

At sentencing, the Court sustained Defendant's objection regarding the firearm

enhancement "[g]iven the unusual circumstances in this case," and sentenced Defendant to 151

months on Counts One and Two and 120 months on Count 4, the "maximum curve allowed by

statute" on that count, with the sentences to run concurrently.  Doc. 135 at 6-7; Doc. 126.

Defendant appealed, arguing that the Court had improperly denied his motions to

suppress, since the search of his apartment was unreasonable and the search warrant was issued

based on an affidavit containing statements made in reckless disregard of the truth.  *United

States v. Manning*, 140 Fed. Appx. 212, 217 (11th Cir. 2005).  The Eleventh Circuit rejected both

of these arguments and affirmed the Court's rulings.  *Id*. at 213.  A petition for writ of certiorari

was denied. *Manning v. United States*, 546 U.S. 969 (2005).

Defendant then filed the instant motion.  On this occasion, he raises one claim of

prosecutorial misconduct and six claims of ineffective assistance of counsel.  Doc. 156.  Each

will be considered in turn.

## DISCUSSION

      1.      Prosecutorial misconduct.

In this claim, Defendant charges that counsel for the Government knew or should have known that at the time of the Indictment, the lab results for the drugs seized from Defendant's apartment "completely failed to reveal any finding that any of the substances tested by the lab examiners contained any detectable amount(s) of 'sodium bicarbonates' or 'crack cocaine.'" Doc. 157 at 8 & 10.  In support of this claim, Defendant points to the November 6, 2003, report prepared by the Florida Department of Law Enforcement which indicates that analyses of various items "containing off white substance" revealed "Cocaine, 153.7 grams" and "Cocaine, 74.0 grams."  Doc. 156, Ex. 2.

While there can be no dispute that in the first reports the FDLE did not elaborate on the type of cocaine found in Defendant's apartment, subsequent amended reports, presumably secured by the Government to correct this oversight, *see*, *e.g*., Doc. 156, Ex. 4 ("I should note that this report, like the earlier drug lab report, does not specify that the cocaine was in the base form, and I will contact [FDLE] to have him produce an amended report, as before"), indisputably establish that the cocaine seized from Defendant's apartment was "in the base form."  Doc. 161, Attach. 1 & 2.  As used in the statutes and Guidelines, cocaine in its base form is "crack cocaine."  *See United States v. Pope*, 461 F.3d 1331, 1333 (11th Cir. 2006); *United States v. Vasquez*, 121 F.3d 622, 623 (11th Cir. 1997); *United States v. Sloan*, 97 F.3d 1378 (11th Cir. 1996); U.S. Sentencing Guidelines Manual §2D1.1(c).

Thus, there was no "false evidence and documents" or fabrication of evidence.  Indeed,

the Government was not required to have a lab report confirming the type of drugs before

presenting the indictment to the grand jury.  Rather, he was only required to have "probable

cause to believe that the accused committed an offense defined by statute...."  *Bordenkircher v.*

*Hayes*, 434 U.S. 357, 364 (1978).  It cannot seriously be disputed that the Government had

sufficient probable cause to believe the drugs recovered from Defendant's apartment were crack

cocaine, even without a lab report.

>          2.          Ineffective assistance of counsel.

Because the remaining claims raise the issue of counsel's effectiveness, a review of

*Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must

demonstrate (1) that his counsel's performance was below an objective and reasonable

professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at

686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either

the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of

counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see*

*also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual

support for his contentions that counsel's performance was constitutionally deficient.  *Smith v.*

*White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance

in light of all of the circumstances at that time and indulge in a strong presumption that counsel's

conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at

689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A

"reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the

proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions

set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the

best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

A.      Failure to attack defective indictment.

This claim rests on the same basis as the claim of prosecutorial misconduct. For the

reasons stated *supra*, the claim is without merit. Cocaine in its base form is crack cocaine and

nothing else. *United States v. Munoz-Realpe*, 21 F.3d 375, 377-78 (11th Cir. 1994).

Furthermore, the Government was not required to prove that the drugs at issue were crack

cocaine, since Defendant himself, not just his attorney on his behalf, stipulated that the drugs

seized from Defendant's apartment and recovered from the CI had been "tested by the Florida

Department of Law Enforcement and confirmed to contain the type and quantity of drugs

described," i.e., 229.4 grams "of a mixture or substance containing cocaine base, commonly

known as crack cocaine." Doc. 139  at 164-65. Furthermore, counsel had no basis for objecting

to the lab reports. It is inconsequential that the reports did not indicate the presence of sodium

bicarbonate, a typical processing agent, since the conclusion that the cocaine was in its base form

was sufficient legally to signal that the drugs were crack cocaine and no other form of cocaine

base.

        B.        Failure to challenge Court's jurisdiction to sentence Defendant for crack cocaine.

        This claim is part and parcel of the previous two claims, and additional consideration is

not warranted.

        C.        Failure to object to breach of stipulation.

        In this claim, Defendant claims that counsel misled him "by telling [him] that he would

make the government prove the type of drugs at sentencing." Doc. 157 at 21. According to

Defendant, he "was only aware of the stipulation of the firearm [and] the $2,220.00 in United

States currency" and was "never told nor was he informed that he was signing to a stipulation

stating that the government would not have to prove the drug type or quantity...." *Id.*

        Even if the Court credits this version of events regarding the stipulation, counsel was not

ineffective for entering into the stipulation. Counsel was in possession of lab reports

establishing the type and quantity of drugs at issue, and there is nothing in those reports to raise a

red flag as to their accuracy. Certainly, counsel could have put the Government to its proof and

required it to call the drug analyst to the stand to defend his conclusions and their bases. Indeed,

it appears that initially counsel considered that route. *See* Doc. 156, Ex. 4 ("I understand from

our conversation...that you will not stipulate as to the fact of, or quantity, of the cocaine, so I

plan on having [the drug analyst] available to testify at trial"). However, his decision to abandon

that tactic and enter the stipulation appears to be strategic and reasonable. Even if counsel had

refused to enter into the stipulation, there is nothing in the record to suggest that the Government

could not have proven both the type and quantity of drugs reflected in the lab reports. The

Government was prepared to call the analyst to the stand, strongly suggesting its belief in his

conclusions.  Indeed, although Defendant maintains that the drugs "could not have withstood the

legal scrutiny of the substance being chemically analyzed as 'crack' cocaine," Doc. 157 at 22,

Defendant has no proof that the drugs were not in fact crack cocaine, and thus, he cannot show

that he was prejudiced by the stipulation.

> D.      Failure to introduce officer's investigation report to show false statement in
>         search warrant affidavit.

In the affidavit in support of the search warrant, the officer stated that through a

confidential informant, "three successful purchases of Crack Cocaine" were made from

Defendant's residence.  Doc. 161, Attach. 2.  The affidavit further indicates that the CI was

"equipped with hidden audio and/or video recording equipment and on all three (3) occasions the

CI made a successful purchase of Crack Cocaine from Mr. Manning inside his residence...." *Id*.

Defendant now complains that both Mr. Murrell and Mr. Printy were ineffective in failing to

introduce the officer's investigation report at the suppression hearings which stated, in part:

> The second attempt to purchase crack cocaine from Mr. Manning at his residence
> on this the 29th day of September 2003 was a successful purchase and we were
> able to get Mr. Manning on video making the transaction....The CI handed Mr.
> Manning the $100.00 and Mr. Manning handed the CI the suspected crack
> cocaine making this a successful purchase.

Doc. 156, Ex. 6.

This claim hinges on a faulty premise, as Defendant is under the impression that the

statements made in the investigation report were actually the statements made in the warrant

affidavit.  Instead, the affidavit is quite generalized regarding the particulars of the controlled

buys and does not include any of the details of the investigation report.  While Defendant is

correct that the officer's testimony at the suppression hearing does facially appear to conflict

with statements he made in the investigation report, his testimony at the suppression hearing was

consistent with the affidavit presented to the state court judge in support of the search warrant

application, a document which was, as Defendant recognizes, the touchstone for determining the

validity of the search warrant.  Indeed, on cross-examination, it was Defendant's attorney, Mr.

Murrell, who secured from the officer an admission that in fact he "did not see in that video [the

CI] hand Mr. Manning any money," and that he did not see Defendant hand the CI any drugs in

return.  Doc. 137 at 48.  Thus, even without questioning the officer regarding statements he made

in the investigation report,[4] Mr. Murrell was able to impeach the officer's testimony.  In the end,

with the Court properly focusing on the affidavit, the impeachment was of limited consequence

since the officer clearly testified that from his review of the video he "believe[d] [he had]

witnessed a crack deal take place," which is sufficient for surviving a *Franks* challenge.  Doc.

137 at 34.  Thus, neither attorney acted deficiently in failing to introduce the investigation report,

and even if it should have been introduced, its introduction would not have altered the outcome

of either suppression hearing.

E.      Failure to argue *Franks* hearing properly.

In this claim, Defendant argues that neither Mr. Murrell nor Mr. Printy focused his

inquiry at the suppression hearing on the proper considerations.  According to Defendant, his

---

[4]The Court is operating under the assumption that the Government had provided
Defendant with a copy of the investigation report either in discovery or before the suppression
hearing, as the Government has not argued that counsel could not have questioned Officer
Hunnings regarding his report because, for example, it was covered under the Jencks Act and
was not divulged until trial.

"entire argument" regarding the validity of the search warrant application was on "the allegations made by Officer Hunnings and how his statement reflected [as] to 'what made the purchases successful.'" Doc. 157 at 27. Instead, counsel improperly argued "that the officers should have known about the faked drug buys and that was tantamount to a disregard for the truth," even though Defendant never told either attorney "that the officers should have known about the faked drug buys." *Id*. Instead, counsel should have argued that the officer himself made a "false statement." *Id*. at 28.

This is a matter which is plainly subsumed within the discretion afforded to any strategic and tactical decision made by counsel which is reasonable in light of all the circumstances. Mr. Murrell impeached the officer's testimony regarding what he could actually see on the video, as opposed to what he believed he saw on the video, and Defendant does not advise the Court as to what he believes counsel should have done further, and he most certainly has failed to establish that no competent counsel would have taken the action that either counsel took in attacking the validity of the search warrant. As explained in the previous section, the Court does not believe that attacking the officer's credibility further would have led to a finding that the search warrant was improperly issued and thus to the suppression of the evidence seized from Defendant's apartment, as the affidavit presented to the state court judge was very generalized and presented none of the arguably inconsistent statements which counsel extracted during the suppression hearing.

F.    Failure to object to superseding indictment as violative of Speedy Trial Act.

This claim is patently meritless, as a superseding indictment "that issues more than 30 days after the arrest, but before the original indictment is dismissed, does not violate" the Speedy

Trial Act, 18 U.S.C. § 3161(b).  *United States v. Mosquera*, 95 F.3d 1012, 1013 (11th Cir. 1996).

Thus, counsel did not act deficiently in failing to move for dismissal of the Superseding

Indictment on speedy trial grounds.

## CONCLUSION

Having carefully considered the matter, the Court finds that neither the attorney for the

Government or either counsel for Defendant acted improperly or ineffectively in his handling of

this case, and the motion to vacate should therefore be denied.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to

vacate, Doc. 156, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this __*31*[st]___ day of October, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**